# EXHIBIT B

## (Settlement Agreement)

176608056.1

## FORBEARANCE AND SETTLEMENT AGREEMENT

This Forbearance and Settlement Agreement (the "Agreement") is made and entered into as of the 8th day of May, 2026 (the "Agreement Date") by and between **11TH ST. WABASH, LLC** ("11th Street"), **MICHIGAN WABASH 11TH LLC** ("Michigan"), **WH INVESTMENT PROPERTIES, L.P.** ("WH"), **WHITEHALL HOTEL SPE, INC.** ("Whitehall", and together with 11th Street, Michigan and WH, the "Whitehall Borrowers"), **EVANSTON NORTHSHORE HOTEL PARTNERS, L.P.** ("Evanston Borrower" and together with the Whitehall Borrowers, the "Borrowers"), **HUI-HSIEN YEN** ("HHY") and **SU-MEI YEN** ("SMY" and together with HHY, the "Yens" or "Guarantors"), **MW MANAGEMENT, INC.** ("MWM", and together with MWM, SMY and HHY, the "Whitehall Pledgors"), **ERIC CHANG**, an individual ("E. Chang"), **WANG FON CHANG**, an individual ("W. Chang"), **SHERMAN CHAO**, an individual ("Chao") and **BANK JI HSIEH**, an individual ("Hsieh" together with HHY, SMY, SBY, EC, WFC, and Chao, the "Evanston Pledgors", and together with the Whitehall Pledgors, the "Pledgors"; Borrowers, Guarantors and Pledgors are collectively, the "Obligors"), **APF-CPX I, LLC** ("CPX I"), **ACCESS POINT FINANCIAL, LLC** ("APF"), and **HDDA, LLC** ("HDDA", together with CPX I and APF, the "Lender Parties"; Lender Parties and Obligors are collectively, the "Parties").    **SB YEN'S MANAGEMENT GROUP, INC.** ("SBY"), **BY HOTEL SPE-3 LLC** ("By Hotel"), **1101 WABASH DEVELOPMENT MEZZ, LLC** ("1101 Wabash"), **WABASH 11TH MEZZ LLC** ("Wabash Mezz"), **PACIFIC TAI MEZZ LLC** ("Pacific Mezz"), **1101 WABASH DEVELOPMENT SPE LLC** ("1101 SPE"), **WABASH 11TH LLC** ("Wabash 11th"), **1101 WABASH DEVELOPMENT LLC** ("1101 Wabash Dev"), and **PACIFIC TAI, LLC** ("Pacific Tai", together with SBY, 1101 Wabash, Wabash Mezz, Pacific Mezz, 1101 SPE, Wabash 11th, and 1101 Wabash Dev. are collectively, "Debtors"), as parties solely as it relates to Sections 6, 8, 9, 10, 12 and 13 of this Agreement.

## WITNESSETH:

WHEREAS, APF loaned Whitehall Borrowers $10,000,000 (the "Whitehall Loan"), evidenced by a Pledge Promissory Note dated February 3, 2016 in the principal amount of $10,000,000 executed by Whitehall Borrowers payable to HDDA, as successor to APF (the "Whitehall Note");

WHEREAS, contemporaneous with the execution of the Whitehall Note, the Yens executed that certain Guaranty Agreement dated February 3, 2016 in favor of HDDA, as successor to APF (the "Whitehall Guaranty");

WHEREAS, Whitehall Pledgors executed that certain Pledge Agreement dated February 3, 2016 in favor of HDDA, as successor to APF (the "Whitehall Pledge");

WHEREAS, APF loaned the Evanston Borrower $5,000,000 (the "Evanston Loan" and together with the Whitehall Loan, the "Loans") evidenced by that certain Pledge Promissory

1

Note dated as of December 7, 2018 executed by the Evanston Borrower payable to HDDA, as successor to APF (the "Evanston Note", together with the Whitehall Note, the "Notes");

WHEREAS, the Yens executed that certain Guaranty Agreement dated November 30, 2018 in favor of HDDA (the "Evanston Guaranty", together with the Whitehall Guaranty, the "Guaranties");

WHEREAS, Evanston Pledgors executed that certain Pledge Agreement dated December 7, 2018 in favor of HDDA (the "Evanston Pledge", together with the Whitehall Pledge, the "Pledges"; the Notes, Guaranties and Pledges, together with all documents executed in connection therewith or relating thereto, together with all amendments and/or modifications, are collectively, the "Loan Documents");

WHEREAS, Borrowers defaulted under the Loan Documents because, among other things, they failed to make payments as and when due (the "Loan Defaults");

WHEREAS, on October 5, 2021, APF and CPX I filed a complaint against the Yens in the United States District Court for the Northern District of Georgia (the "District Court"), initiating Case No. 1:21-cv-04114-SDG (the "District Court Case"), asserting claims against the Yens and seeking damages under Guaranties;

WHEREAS, the Parties and SBY executed that certain Settlement Agreement dated October 25, 2022, amended by that certain First Amendment to Settlement Agreement dated November 16, 2024 (as amended and/or modified, the "Settlement Agreement");

WHEREAS, the Parties and SBY defaulted under the Settlement Agreement because they failed to make payments as and when due under the Settlement Agreement (the "Settlement Defaults", together with the Loan Defaults, the "Existing Defaults");

WHEREAS, on February 20, 2026, APF and CPX filed a Notice of Default and Request for Entry of Consent Judgment in the District Court Case (the "Default Request"), requesting entry of the Consent Judgment agreed to by the Yens in the Settlement Agreement;

WHEREAS, on March 8, 2026, Debtors filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), initiating Case No. 26-10324 (JKS) (Jointly Administered) (the "Bankruptcy Cases");

WHEREAS, on April 13, 2026, Debtors filed their Motion for Entry of an Order Extending the Automatic Stay to Non-Debtor Guarantors Sue-Mei Yen and Hui-Hsien Yen pursuant to 11 U.S.C. §§ 105(a) and 362 and Granting Related Relief (the "Stay Motion", Doc. No. 120) in the Bankruptcy Cases;

2

WHEREAS, on April 14, 2026, the Lender Parties filed an objection (Doc. No. 133) to the Stay Motion in the Bankruptcy Cases;

WHEREAS, the Court set a hearing on the Stay Motion for May 11, 2026 (the "Hearing Date");

WHEREAS, the Parties desire to resolve the Stay Motion and modify the Settlement Agreement as more particularly set forth in this Agreement;

NOW, THEREFORE, in consideration of the promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows, and Debtors agree as to Sections 6, 7, 8, 11 and 12 hereof:

### AGREEMENT:

1.    **Recitals; Definitions.**  The foregoing recitals are confirmed by the Parties as true and correct and are incorporated herein by reference.  The recitals are a substantive, contractual part of this Agreement.  Capitalized terms appearing herein and not otherwise defined shall have the meanings ascribed to such terms in the Settlement Agreement, unless the context hereof shall otherwise require or provide.

2.    **No Waiver; No Commitment to Extend, Modify or Forbear.**

(a)    The execution, delivery and performance of this Agreement by the Lender Parties and the acceptance by the Lender Parties of performance of Obligors hereunder (a) except as expressly provided hereunder, shall not constitute a waiver or release by the Lender Parties of any default that may now or hereafter exist under any of the Loan Documents or Settlement Agreement, (b) shall not constitute a novation of the Loan Documents or Settlement Agreement, and (c) except as expressly provided in this Agreement, shall be without prejudice to, and are not a waiver or release of the Lender Parties' rights at any time in the future upon the occurrence of a New Event of Default hereunder to exercise any and all rights conferred upon the Lender Parties by the Settlement Agreement, the Loan Documents or otherwise at law or in equity.

(b)    Except as expressly provided herein, the Lender Parties have not committed, and are not committing, to extend, modify or otherwise restructure the Loans or Settlement Agreement, or forbear from exercising any of their rights or remedies under the Loan Documents or Settlement Agreement.  No prior course of dealing, no usage of trade, and no oral statements or comments by the Lender Parties or their officers, employees, servicer, attorneys or other agents will be deemed to be a commitment by the Lender Parties to extend, modify or otherwise restructure the Loans or Settlement Agreement or forbear from exercising any rights or remedies, except as expressly set forth herein, unless the same shall be reduced in writing and signed by an authorized representative of the Lender Parties.

3

(c)     Except as expressly modified hereby, the Settlement Agreement and Loan Documents, as modified by the Settlement Agreement, remain unmodified and in full force and effect.

3.     **Payment.**

(a)     May 2026 Interest Payment.  On or before May 8, 2026, Obligors shall pay HDDA (i) the amount of $55,000.00 (the "May Interest Payment"), which HDDA will apply to accrued unpaid interest and (ii) $25,000.00, representing a partial payment of the Lender Parties' attorneys' fees and expenses incurred as a result of the Settlement Defaults (the "Legal Fee Payment").

(b)     Monthly Payments.  On June 1, 2026 and the first day of each month thereafter through and including the New Maturity Date (defined below), Obligors shall make monthly payments of interest to HDDA, with interest accruing on the outstanding unpaid principal balance of the Loans and unpaid COVID-deferred interest at the rate of five percent (5%) per annum (the "Settlement Rate") through a New Event of Default hereunder.

(c)     New Maturity Date.  Payment of all principal and unpaid accrued interest, COVID-deferred interest, Lender Parties' attorneys' reasonable fees and expenses actually incurred and documented, and all other amounts owed under the Loan Documents and Settlement Agreement (excluding unpaid accrued interest at the default rate, late fees and the Exit Fee) shall be paid by Obligors to HDDA on or before May 8, 2027 (the "New Maturity Date").

(d)     Past Due Interest.  On the Agreement Date, unpaid interest accrued at the non-default rate shall be added to the principal amount of the Loans, and will accrue interest as set forth herein.

(e)     Prepayment.  Obligors may prepay the amounts owed hereunder and under the Loan Documents at any time and without penalty.

(f)     Payments by Wire.  All payments owed hereunder shall be paid to HDDA via wire transfer in immediately available funds pursuant to wire instructions set forth in the Settlement Agreement.

4.     **Conditional Waiver of Default Rate Interest, Late Fees and Exit Fee**.  HDDA agrees to waive the receipt of interest at the default rate, late fees and the Exit Fee provided that, after the Agreement Date, there is no New Event of Default and the Loans are satisfied in full on or before the New Maturity Date.  Upon a New Event of Default (other than the Existing Defaults), HDDA shall be entitled to receive interest at the default rate set forth in the Loan Documents, plus any late fees, plus attorneys' fees and expenses, plus the Exit Fee, and the same shall be immediately due and payable.

5.   **Consent Judgment; Acknowledgement.**

(a)   Within one (1) business day of the Agreement Date, counsel for the Lender Parties shall inform the District Court of the Parties' settlement (copying counsel to all other parties hereto) and file a notice of withdrawal (without prejudice) of the Default Request.

(b)   If there is a New Event of Default under this Agreement, the Lender Parties shall be entitled to exercise the remedies set forth in the Loan Documents and/or Settlement Agreement, including without limitation, presenting the Consent Judgment to the District Court for entry on the terms set forth in Section 7 of the Settlement Agreement and may take any steps to enforce the Consent Judgment and collect the amounts owed thereunder.

(c)   Obligors acknowledge and agree that the following are owed to HDDA as of February 20, 2026 and further acknowledge and agree that no payments have been made by Obligors or SBY between February 20, 2026 and prior to the payments to be paid hereunder:

|  | Whitehall Loan | Evanston Loan |
|---|---|---|
| Principal | $8,045,053.90 | $4,957,824.88 |
| Non-Default Interest (as of 9/30/2022) | $851,185.16 | $649,464.84 |
| Default Interest (as of 9/30/2022) | $815,679.08 | $419,173.00 |
| COVID-Deferred Interest | $230,534.61 | $324,701.74 |
| Late Fees | $117,466.39 | $26,479.61 |
| Exit Fee | $80,450.54 | $0.00 |
| Modification Fee | $2,500.00 | $2,500.00 |
| Attorneys' Fees | $400,000.00 | $400,000.00 |
| Inspection Fee | $0.00 | $4,650.00 |
| Subtotal | $10,542,869.68 | $6,784,794.07 |
| Unpaid Accrued Interest (after 9/30/2022) | $3,935,218.62 | $2,835,451.40 |
| *Less amounts received under Settlement Agreement* | $2,774,496.22 | $1,914,856.05 |
| Total | $11,703,592.09 | $7,705,389.42 |

6.   **Bankruptcy Matters.**

(a)   On or before the Hearing Date, the Debtors shall submit a proposed Stipulated Order, under Certification of Counsel procedure, with a copy of this Agreement attached thereto, seeking Court authority to resolve the Stay Motion and approving the Debtors' entry into this Agreement..

(b)   Upon the entry of the Stipulated Order discussed in Section 6(a), counsel for Debtors shall file with the Bankruptcy Court a notice of withdrawal (with prejudice) of the Stay Motion..

(c)   The Parties and Debtors agree to act in good faith, support approval of this Agreement and seek and support the Bankruptcy Court's entry of the Stipulated Order and to take actions as reasonably necessary to obtain entry of the Stipulated Order.

7. **Potential Refinancing.**  The Lender Parties agree to reasonably cooperate with the Obligors to facilitate any good-faith refinancing efforts, subject to a subsequent agreement as to the proceeds thereof which are to be paid to the Lender Parties.

8. **Waiver; Release.**

(a)    Obligors acknowledge and agree that there exists no breach, default or event of default by the Lender Parties or any of their predecessors in interest under the Loan Documents or Settlement Agreement, or any event or condition that, with notice or passage of time, or both, would constitute a breach, default or event of default by the Lender Parties or any of their predecessors in interest and represent and warrant to the Lender Parties that the Loan Documents and Settlement Agreement (each as modified hereby) are not subject to any credits, charges, claims, or rights of offset or deduction of any kind or character whatsoever.

(b)    Obligors hereby release, acquit and forever discharge APF, CPX I, HDDA, and each of their respective past and present officers, directors, shareholders, partners, agents, employees, attorneys, heirs, assigns, representatives, affiliates, successors and predecessors in interest (collectively, the "Lender Released Parties"), of and from any and all actions, causes of action, claims, suits, damages, judgments, liens, rights, costs, expenses, demands and compensation whatsoever in law and/or equity, that Obligors, whether collectively or individually, had, now has, or may later have or claim to have against any of the Lender Released Parties, now accrued or that may hereafter accrue, that have or allegedly have existed, occurred, happened, arisen, or transpired at any time from the beginning of time to the Agreement Date, WHICH DO OR MAY EXIST, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN (collectively, the "Obligor Released Matters"), including, without limitation, any of the same arising from or related to anything done, omitted to be done, or allowed to be done by any of the Lender Released Parties and in any way connected with this the District Court Case, the Bankruptcy Case, this Agreement, the Settlement Agreement, the Loan Documents, the Loans, any funds disbursed or not disbursed thereunder or the manner of such disbursement, any other credit facilities provided or not provided, or any past or present deposit or other accounts (including, without limitation, "dominion of funds" accounts and lockbox arrangements), and any other dealings between any of the Obligors and any of the Lender Released Parties.

(c)    Debtors hereby, subject to the express approval of the Bankruptcy Court, release, acquit and forever discharge APF, CPX I, HDDA, and each of their respective past and present officers, directors, shareholders, partners, agents, employees, attorneys, heirs, assigns, representatives, affiliates, successors and predecessors in interest (collectively, the "Lender Released Parties"), of and from any and all actions, causes of action, claims, suits, damages, judgments, liens, rights, costs, expenses, demands and compensation whatsoever in law and/or equity, that Debtors, whether collectively or individually, had, now has, or may later have or claim to have against any of the Lender Released Parties, now accrued or that may hereafter accrue, that have or allegedly have existed, occurred, happened, arisen, or transpired at any time

6

from the beginning of time to the Effective Date, WHICH DO OR MAY EXIST, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN (collectively, the "Debtor Released Matters", together with the Obligor Released Matters, the "Released Matters"), including, without limitation, any of the same arising from or related to anything done, omitted to be done, or allowed to be done by any of the Lender Released Parties and in any way connected with this the District Court Case, the Bankruptcy Case, this Agreement, the Settlement Agreement, the Loan Documents, the Loans, any funds disbursed or not disbursed thereunder or the manner of such disbursement, any other credit facilities provided or not provided, or any past or present deposit or other accounts (including, without limitation, "dominion of funds" accounts and lockbox arrangements), and any other dealings between any of the Debtors and any of the Lender Released Parties.

(d)     Obligors and Debtors agree that this waiver and release is an essential and material term of this Agreement and that the agreements in this Section 7 are intended to be in full satisfaction of any alleged injuries or damages of Obligors and/or Debtors in connection with the Released Matters. Obligors and Debtors represent and warrant that they have not purported to convey, transfer or assign any right, title or interest in any Released Matter to any other person or entity and that the foregoing constitutes a full and complete release of the Released Matters. Obligors and Debtors understand that they may later discover claims or facts that may be different from, or in addition to, those that any of them has or now knows or believes to exist regarding the subject matter of the release contained in this Section 8, and which, if known at the time of signing this Agreement, may have materially affected this Agreement and such party's decision to enter into it and grant the release contained in this Section 8. Nevertheless, Obligors and Debtors intend to fully, finally and forever settle and release all claims that now exist, may exist or previously existed, as set out in the release contained in this Section 8, whether known or unknown, foreseen or unforeseen, or suspected or unsuspected, anticipated or anticipated, and the release given herein is and will remain in effect as a complete release, notwithstanding the discovery or existence of such additional or different facts.

(e)     Obligors and Debtors have consulted with legal counsel prior to signing this release, or had an opportunity to obtain such counsel and knowingly chose not to do so, and executes such release voluntarily, with the intention of fully and finally extinguishing all Released Matters. Obligors and Debtors covenant that they will not sue (at law or in equity), in any regulatory proceedings or otherwise any of the Lender Released Parties with respect to any of the Released Matters. It is the intention of Obligors and Debtors, and each of them, through this Agreement, and with the advice of counsel, to fully, finally and forever settle and release all such matters.

9.      **Representations and Warranties.**  In order to induce the Lender Parties to execute, deliver, and perform this Agreement, Obligors and Debtors represent and warrant to the Lender Parties that:

(a)     The execution, delivery and performance of this Agreement by Obligors and Debtors of their respective obligations hereunder will not violate or result in a breach or constitute a default under any agreements to which such Obligor is a party;

(b)     Each Obligor has full power and authority to enter into this Agreement and this Agreement, once executed and delivered, will be a valid and binding obligation of each Obligor enforceable against it in accordance with the Agreement's terms;

(c)     Subject to entry of the Stipulated Order and the occurrence of the Effective Date, each Debtor has the full power and authority to enter into this Agreement and this Agreement, once executed and delivered, will be a valid and binding obligation of each Debtor enforceable against it in accordance with the Agreement's terms

(d)     The signatory executing this Agreement on behalf of any Obligor or Debtor has the power, authority and legal right to execute this Agreement and all documents to be executed in connection herewith on such party's behalf and to bind such party to the promises, covenants, terms and conditions set forth herein.

10.     **Conditions Precedent.**

(a)     This Agreement shall become effective as between the Lender Parties and Obligors as of the Agreement Date upon the satisfaction of each of the following (the "Obligor Conditions Precedent"):

(i)     HDDA's receipt of the May Interest Payment and the Legal Fee Payment; and

(ii)     The Lender Parties' receipt of counterparts of this Agreement duly executed by and on behalf of Obligors and Debtors.

(b)     This Agreement shall be effective as between the Lender Parties and Debtors upon the satisfaction of each of the following (the "Debtor Conditions Precedent"):

(i)     Satisfaction of each of the Obligor Conditions Precedent;

(ii)     The Bankruptcy Court's entry of the Stipulated Order; and

(iii)     The occurrence of the Effective Date. (The "Effective Date" is the day that is one (1) business day following the date on which the Stipulated Order is final and non-appealable.)

11.     **New Event of Default; Remedies.**

(a)     Each of the following shall constitute a "New Event of Default" hereunder:

(i)     Failure by any Obligor to make any payment as and when due hereunder and such failure continues for five business (5) days after notice by

8

HDDA to Obligors, with notice and cure limited to three (3) times per calendar year;

(ii)    A breach by any Obligor of any of the conditions, covenants, agreements, terms, representations and/or warranties set forth in this Agreement and, only to the extent such default or breach is capable of being cured or remedied by the passage of time, such default shall not have been remedied or waived within five (5) days after notice from Lender of such default;

(iii)    The entry of a final and non-appealable judgment against any Borrower in favor of any creditor(s) of any Borrower in an amount in excess of $500,000, which judgment is not otherwise covered by insurance;

(iv)    A proceeding shall be commenced by or against any Obligor seeking liquidation, reorganization, bankruptcy or other relief with respect to their debts under any debtor relief law or seeking the appointment of a trustee, receiver, liquidator, custodian, or other similar official with respect to any Obligor or any of their assets; provided, however, if the proceeding is in the nature of an "involuntary" bankruptcy case or a lawsuit or proceeding seeking the appointment of a trustee, receiver, liquidator or custodian over any Obligor and/or its assets (any such proceeding, an "Involuntary Proceeding"), a New Event of Default shall be deemed to occur only as a result of such Involuntary Proceeding if such Involuntary Proceeding is not dismissed within forty-five (45) days after such Involuntary Proceeding is commenced;

(v)    Any Obligor initiates any judicial, administrative or arbitration proceeding against Lender or any of the Lender Released Parties (defined herein) for the purposes of delaying or hindering Lender's ability to enforce its rights or remedies under this Agreement and/or the Loan Documents; or

(vi)    If the Court does not enter the Stipulated Order on or before May 13, 2026.

(b)    Upon the occurrence of a New Event of a Default:

(i)    Lender Parties' agreement to forbear shall terminate automatically without further act or action by any of the Lender Parties and the Lender Parties shall have the immediate right to exercise their rights and remedies under the Loan Documents, the Settlement Agreement, hereunder and/or applicable law or in equity;

(ii)    All indebtedness owed by Obligors under the Loan Documents, Settlement Agreement and this Agreement is immediately due and payable without demand or notice;

(iii)    The Lender Parties may present the Consent Judgment to the Court for entry on the terms set forth in the Settlement Agreement and may take any

9

steps to enforce the Consent Judgment, including requesting one or more writs of execution (the "Writ"), domesticating the Consent Judgment, pursuing collection of the amounts owed under the Consent Judgment, recording the Writ in the public records of any county or state, and executing on the Writ and levying on the Yens' assets;

(iv)     The Lender Parties may take any steps in any bankruptcy case filed by or against any Obligor to protect the Lender Parties rights, including without limitation the Lender Parties rights as a secured creditor, and Obligors acknowledge and agree that the Lender Parties are not required to marshal any collateral securing the indebtedness owed under the Loan Documents; and

(v)     The Lender Parties may exercise any and all rights to conduct a foreclosure sale and/or UCC sale of any and all collateral securing the Indebtedness, including without limitation, the Properties.

12.     **Miscellaneous.**

(a)     Governing Law.  This Agreement shall in all respects be governed by, and construed in accordance with, the laws of the State of Georgia and federal law, as applicable.

(b)     Headings.  Section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

(c)     Enforceability.  Should any one or more of the provisions of this Agreement be determined to be illegal or unenforceable as to one or more of the Parties hereto, all other provisions nevertheless shall remain effective and binding on the Parties hereto.

(d)     No Novation.  This Agreement is given as an amendment and modification of, and not as a payment of, the obligations of Obligors under the Loan Documents and Settlement Agreement and is not intended to constitute a novation of the Loan Documents or Settlement Agreement.

(e)     Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of Obligors, the Lender Parties, Debtors and each of their respective successors, assigns and legal representatives, including any chapter 7 or chapter 11 trustee appointed with respect to any Obligor and/or any Debtor.

(f)     Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original (including electronic copies) but all of which together shall constitute one and the same instrument.  Facsimile, PDF or other electronic signatures hereto shall be effective as manually executed originals.

(g)     No Waiver.  Any future waiver, alteration, amendment or modification of any of the provisions of the Loan Documents, the Settlement Agreement or this Agreement shall

10

not be valid or enforceable unless in writing and signed by all Parties, it being expressly agreed that neither the Loan Documents, the Settlement Agreement nor this Agreement can be modified orally, by course of dealing or by implied agreement.  Any delay by any of the Lender Parties in enforcing its rights after a New Event of Default shall not be a release or waiver of a New Event of Default and shall not be relied upon as a release or waiver of the default.

(h)    Survivability.  The releases, warranties and representations of the Parties and Debtors in this Agreement shall survive the termination of this Agreement.

(i)    Joint Draftsmanship.  The terms and conditions set forth in this Agreement are the product of joint draftsmanship by all Parties and Debtors, each being represented by counsel, and any ambiguities in this Agreement or any documentation prepared pursuant to or in connection with this Agreement shall not be construed against any party because of draftsmanship.

(j)    Strict Compliance.  The failure of a Party at any time or times to demand strict performance by the other Parties of any of the terms, covenants or conditions set forth herein, or of any of the Loan Documents or the Settlement Agreement shall not be construed as a continuing waiver or relinquishment thereof.  Any Party may, at any time, demand strict and complete performance by the other Parties of the terms, covenants and conditions of the Settlement Agreement, as modified hereby, and/or any of the Loan Documents.

13.    **ENTIRE AGREEMENT.  THIS AGREEMENT, THE SETTLEMENT AGREEMENT, AND THE LOAN DOCUMENTS, REPRESENT THE FINAL AGREEMENT AMONG THE OBLIGORS, THE LENDER PARTIES AND DEBTORS AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS AMONG OBLIGORS, THE LENDER PARTIES AND DEBTORS.**

[Remainder of page intentionally left blank.  Signature pages follow.]

11

**BORROWERS:**

11TH ST. WABASH, LLC

By: _____

Name: Su-Mei Yen

Title: CFO

MICHIGAN WABASH 11TH, LLC

By: _____

Name: Su-Mei Yen

Title: CFO

WH INVESTMENT PROPERTIES, L.P.

By: _____

Name: Su-Mei Yen

Title: CFO

WHITEHALL HOTEL SPE, INC.

By: _____

Name: Su-Mei Yen

Title: CFO

EVANSTON NORTHSHORE HOTEL
PARTNERS, L.P.

By: _____

Name: Su-Mei Yen

Title: CFO

13

**GUARANTORS AND PLEDGORS:**

HUI-HSIEN YEN, an individual

SU-MEI YEN, an individual

MW MANAGEMENT, INC.

By:

Name: Su-Mei Yen

Title: CFO

ERIC CHANG, an individual

Eric Chang by Su-Mei Yen

WANG FON CHANG, an individual

Wang Fon Chang by Su-Mei Yen

SHERMAN CHAO, an individual

Sherman Chao by Su-Mei Yen

BANK JI HSIEH, an individual

Bank Ji Hsieh by Su-Mei Yen

14

**DEBTORS:**

**SB YEN'S MANAGEMENT GROUP, INC.**

By:

Name: Su-Mei Yen

Title: CFO

**BY HOTEL SPE-3 LLC**

By:

Name: Su-Mei Yen

Title: CFO

**1101 WABASH DEVELOPMENT MEZZ, LLC**

By:

Name: Su-Mei Yen

Title: CFO

**WABASH 11TH MEZZ LLC**

By:

Name: Su-Mei Yen

Title: CFO

**PACIFIC TAI MEZZ LLC**

By:

Name: Su-Mei Yen

Title: CFO

**1101 WABASH DEVELOPMENT SPE LLC**

By:

Name: Su-Mei Yen

Title: CFO

15

**WABASH 11TH LLC**

By:
Name: Su-Mei Yen
Title: CFO

**1101 WABASH DEVELOPMENT LLC**

By:
Name: Su-Mei Yen
Title: CFO

**PACIFIC TAI, LLC**

By:
Name: Su-Mei Yen
Title: CFO

16

IN WITNESS WHEREOF, Obligors, the Lender Parties and Debtors hereto have set their hands and seals as of the Agreement Date set forth above.

**LENDER PARTIES:**

**APF-CPX I, LLC,** a Delaware limited liability company

By:  **ACCESS POINT FINANCIAL, LLC,** a Delaware limited liability company, as servicer for APF-CPX I, LLC

By:  _____
Name:  Valerie K. Richmond
Title:   Authorized Representative

**APF-CPX II, LLC,** a Delaware limited liability company

By:  **ACCESS POINT FINANCIAL, LLC,** a Delaware limited liability company, as servicer for APF-CPX II, LLC

By:  _____
Name:  Valerie K. Richmond
Title:   Authorized Representative

**ACCESS POINT FINANCIAL, LLC,** a Delaware limited liability company

By:  _____
Name:  Valerie K. Richmond
Title:   Authorized Representative

**HDDA, LLC,** a Delaware limited liability company

By:  _____
Name:  Valerie K. Richmond
Title:   Authorized Representative

12