**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br>BY HOTEL SPE-3 LLC,<br>                      **Debtors.**[1] | Chapter 11<br><br>Case No. 26-10324 (JKS)<br><br>(Jointly Administered)<br>Re: Docket Nos. 6, 209 |

**FOURTH INTERIM ORDER (A) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, (C) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(B), AND (D) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), having filed a motion (the "Motion")[2] for entry of a fourth interim order (the "Fourth Interim Order") and final order (the "Final Order") pursuant to section 105, 361, 362, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), the Court having considered the Motion, the Declarations of Su-Mei Yen and Ted Mandigo, and the evidence submitted at the interim hearing held before the Court on March 13, 2026 to consider entry of an interim order, and the Court having entered an interim order (the "First Interim Order") [Doc. No. 60], a second interim order (the "Second Interim Order") [Doc. No. 79], and a third interim order (the "Third Interim Order") [Doc. No. 196], ACORE Capital Mortgage, LP, in its capacity as Administrative Agent of Delphi CRE Funding LLC ("Secured Lender"), having consented to entry of an interim order granting the relief requested herein until July 28, 2026, and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and

---

[1] The Debtors in these chapter 11 cases (the "Chapter 11 Cases") and the last four digits of their respective identification numbers are By Hotel SPE-3 LLC (3619); 1101 Wabash Development Mezz, LLC (9294); Wabash 11th Mezz LLC (4278); Pacific Tai Mezz LLC (3717); 1101 Wabash Development SPE LLC (9201); Wabash 11th LLC (3098); 1101 Wabash Development LLC (3365); Pacific Tai, LLC (9675); and SB Yen's Management Group, Inc. (1132). The location of the Debtors' corporate headquarters and the Debtors' service address is 806 N York Rd., Hinsdale, IL 60521.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

irreparable harm to the Debtors pending the Final Hearing and is otherwise fair and reasonable pending the Final Hearing, and essential for the continued operation of the Debtors' businesses, and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.      On March 8, 2026, (the "Petition Date"), the Debtors filed petitions for relief under Chapter 11 of the United States Code (the "Bankruptcy Code"). The Debtors are in possession of their property and continue to operate and manage their businesses as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner. As of the date hereof, no official committee of unsecured creditors has been appointed in these Chapter 11 Cases.

B.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. The Court further finds that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter a final order hereon consistent with Article III of the U.S. Constitution. The Court further finds that venue of this proceeding is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory bases for the relief requested herein are sections 105(a), 361, 362 and 363 of the Bankruptcy Code, and Rule 4001 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (as amended, the "Local Rules").

D.      Notice of the Interim Hearing and the relief requested in the Motion has been given in accordance with the provisions of Local Rule 9013-1(m) to (i) the Office of the United States

Trustee, (ii) Secured Lender, and (iii) the creditors holding the twenty largest unsecured claims against the Debtors. Under the circumstances, such notice of the Interim Hearing and the relief requested in the Motion complies with all relevant provisions of the Bankruptcy Rules and Local Rules.

E.       As of the Petition Date, Debtors Wabash 11th LLC, 1101 Wabash Development LLC, and Pacific Tai, LLC were parties to that certain Loan Agreement dated August 30, 2019 (as amended, modified, restated, or supplemented, the "Loan Agreement" and together with all other documents, instruments, and agreements delivered in connection with the Loan Agreement, as amended modified, restated, or supplemented, collectively, the "Loan Documents") by and among Borrower, Agent, and Lenders (each as defined in the Loan Agreement). Amounts due under the Loan Documents, if any, shall be referred to as the "Obligations". The Obligations are purportedly secured by liens on assets of the Debtors as set forth in the Loan Documents (the "Collateral") pursuant to a mortgage dated August 30, 2019.

F.       As of the Petition Date, the Debtors purportedly had seven bank accounts in total, including (i) five operating accounts,[3] comprised of two operating accounts with Huntington National Bank (Acct. Nos. ending 2220 and 9082), and three operating accounts with International Bank of Chicago (Acct. Nos. ending 2828, 2801, and 3018) (collectively, the "Operating Accounts" and individually an "Operating Account"), and (ii) two lockbox accounts with Key Bank (Acct. Nos. ending 7999 and 8539) (account ending in 8539 is a CMA lockbox) (collectively, the "Lockbox Accounts," and together with the Operating Accounts, the "Bank Accounts"). Secured Lender may have a security interest in one or more of the Bank Accounts. Prior to the

---

[3] Secured Lender is currently investigating whether the Debtors have transferred funds to non-Debtor bank accounts for non-Debtor operations, and Secured Lender reserves all rights thereto. The term "Operating Accounts" as used herein shall include any such non-Debtor bank accounts.

Petition Date, Secured Lender may have been able to offset the amounts in one or more of the Bank Accounts.

G.      The Debtors have a pressing need for the immediate use of Cash Collateral (as defined below) to continue operating as a going concern (including funding their day-to-day operations which includes payroll, vendors, and the costs of these Chapter 11 Cases), minimize disruption, rebut any skepticism regarding the Debtors' ability to operate as a going-concern and stabilize business operations in response to these Chapter 11 Cases. In the absence of the immediate use of the Cash Collateral, serious and irreparable harm to the Debtors and their respective estates will occur and impair the Debtors' efforts to reorganize.

H.      The Debtors reasonably and in good faith believe that the use of the Cash Collateral is sufficient to fund all projected, legitimate, and allowable expenses of the Chapter 11 Cases from the Petition Date through the period to which the Budget (as defined below) pertains.

I.      Pursuant to the Loan Documents, Secured Lender may be entitled to adequate protection of their interests in the Collateral and the proceeds thereof.

J.      Secured Lender has stipulated to the terms of this Fourth Interim Order while reserving all rights.

K.      The Debtors have requested immediate entry of this Fourth Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(d). The permission granted herein to use the Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtors. This Court concludes that entry of this Fourth Interim Order is in the best interest of the Debtors' estates and their creditors.

**IT IS THEREFORE ORDERED THAT:**

1.     The Motion is hereby GRANTED to the extent set forth in this Fourth Interim Order. Any objections to the Motion with respect to entry of this Fourth Interim Order to the extent not withdrawn, waived or otherwise resolved, and all reservation of rights included therein, are hereby suspended.

2.     Unless otherwise ordered by the Court or with Secured Lender's prior written approval, and subject to the Carve-Out (as defined below), the Debtors are authorized to use Cash Collateral (as defined below) as set forth in this Fourth Interim Order and the Budget (as defined below) through and including (but not beyond) the earliest to occur of (i) the occurrence of a Termination Event (as defined below) or (ii) July 28, 2026.

3.     The Debtors are granted limited use of Cash Collateral conditioned upon the following:

 a. All "cash collateral" (as that term is used in Bankruptcy Code section 363(a)) that the Debtors had on hand as of the Petition Date or have received since the Petition Date, including (i) all Collateral, (ii) all funds in all bank accounts held in the name of or on behalf of the Debtors (other than the Lockbox Accounts), and (iii) all products and proceeds of the foregoing (collectively, the "Cash Collateral") is currently held in one or more of the Operating Accounts maintained at Huntington National Bank;

 b. All Cash Collateral that the Debtors receive subsequent to the entry of this Fourth Interim Order shall be swept daily into one or more of the Operating Accounts maintained at Huntington National Bank. The Debtors shall not

withdraw any funds from the Operating Accounts except as expressly provided hereinafter in this Fourth Interim Order;

c. Absent Secured Lender's prior written approval, the use of any Cash Collateral shall be restricted to payment only of the expenses specified in the budget attached hereto as Exhibit 1 (as the same may be amended or modified from time with the consent of Secured Lender, the "Budget"; all references herein to the "Budget" shall mean as the same is subject to the Permitted Variances (as defined below)); *provided, however*, that Secured Lender reserves all rights and defenses with respect to the payment of any management fees pursuant to the Budget;

d. The Budget includes only post-petition expenses that must be paid in the ordinary course, to avoid immediate and irreparable harm to the Debtors, or as otherwise authorized pursuant to a separate order of the Court;

e. The Debtors shall not make payments pursuant to the Budget to any employees of the Debtors for services performed on behalf of or for the benefit of non-Debtors. To the extent that the Debtors have made payments pursuant to the First Interim Order, the Second Interim Order, or the Third Interim Order to employees of the Debtors for services performed on behalf of or for the benefit of non-Debtors, all portions of those payments allocable to services performed on behalf of or for the benefit of non-Debtors shall be returned by such employees to the Debtors no later than five (5) business days from entry of this Fourth Interim Order, to the extent not already returned. Secured Lender reserves all rights and defenses with respect to all

6

amounts paid to employees of the Debtors for services performed on behalf of or for the benefit of non-Debtors at all times;

f.  Absent Secured Lender's prior written approval, the Debtors are permitted during each bi-weekly period covered by a Variance Report (as defined below) to have a deficiency in total actual net cash flow (i.e., the difference of aggregate receipts and aggregate disbursements) in comparison to total projected net cash flow as set forth in the Budget for that bi-weekly period by up to fifteen percent (15%) (collectively, the "Permitted Variances");

g.  The Debtors shall provide a report of Permitted Variances to Secured Lender and the U.S. Trustee no later than five (5) calendar days after each bi-weekly period set forth under the Budget has elapsed (such reports, each, a "Variance Report" and collectively, the "Variance Reports");

h.  The Debtors shall provide Secured Lender, no later than one (1) business day after entry of this Fourth Interim Order, with financial information in sufficient detail, as determined in Secured Lender's discretion, to allow Secured Lender to recalculate projected revenues and receipts. Such financial information shall include, but is not limited to, (a) for the Budget covering this Fourth Interim Order, (i) projected occupancy; (ii) projected revenue per available room; and (iii) projected average daily rate, and (b) for the Budget covering the Third Interim Order,[4] a comparison of actual

---

[4] Paragraphs 3(c) and 3(e) of the Third Interim Order refer to the First Interim Order. As agreed to in an email between the Debtors' and Secured Lender's counsel, such references to the First Interim Order were erroneously included and, for the avoidance of doubt, the foregoing paragraphs in the Third Interim Order shall be understood to refer to the Second Interim Order.

and projected occupancy, revenue per available room, and average daily rate; and

i.   Under no circumstances shall the Debtors:

    i.   Use Cash Collateral for any purpose other than those authorized by this Fourth Interim Order and as identified in the Budget without Secured Lender's prior written approval;

    ii.   Use Cash Collateral to the extent that expenses listed in the Budget are not actually incurred; or

    iii.   Use Cash Collateral to pay any fees and expenses of any professionals retained by the Debtors absent allowance pursuant to a separate order of this Court following written notice, a hearing, and the opportunity to object.

4.   As adequate protection for the respective interests of Secured Lender, for, and solely to the extent of, any diminution in the value of the Collateral resulting from (i) the Debtors' use of Cash Collateral, (ii) the use, sale, and/or lease of the Collateral (other than Cash Collateral) pursuant to section 363(c) of the Bankruptcy Code, and (iii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, Secured Lender is hereby granted a continuing replacement security interest in, and lien (collectively, the "Replacement Liens"), which Replacement Liens shall have the same priority, validity, force, extent, and effect as the liens that they replace, effective as of the Petition Date without the necessity of Secured Lender taking any further action, upon the right, title and interest in the following property of the Debtors:

a.   All Collateral of Secured Lender, including all proceeds, profits, rents, and products thereof; and

b.  All property acquired by the Debtors after the Petition Date, which is of the same nature, kind, and character as the Collateral, and all proceeds, profits, rents, and products thereof.

5.      The Replacement Liens provided herein shall be deemed automatically valid and perfected with such priority as provided in this Fourth Interim Order, without any further notice or act by any party that may otherwise be required under any other law. Notwithstanding the foregoing, the Debtors shall, upon request of Secured Lender, execute and deliver such documents as may be reasonably requested by Secured Lender to create and perfect the security interests and liens described herein under applicable non-bankruptcy law, and Secured Lender shall be authorized to file and record such documents and take such other actions as may be necessary to perfect such security interests and liens under all such laws and to correctly describe the collateral subject thereto.

6.      As additional adequate protection to Secured Lender, and notwithstanding anything to the contrary in this Fourth Interim Order or the Budget, within two (2) business days of the delivery of the Variance Report following entry of this Fourth Interim Order and upon delivery of every Variance Report thereafter (each such date, a "Sweep Date"), the Debtors shall pay to Secured Lender, by wire transfer to an account designated by Secured Lender in writing, an amount equal to the Excess Cash (as defined below) as of the close of business on the last day of the bi-weekly period covered by the applicable Variance Report (each such remittance, an "Excess Cash Sweep Payment" and such bi-weekly period, the "Measurement Date"). For purposes hereof, "Excess Cash" means, as of each Sweep Date, the aggregate balance of immediately available funds on deposit in the Operating Accounts (*i.e.*, the Cash) *less* (a) checks in transit, and (b)(i) the sum of $500,000.00 (the "Minimum Operating Balance"), and (ii) the aggregate projected

disbursements set forth in the Budget for the bi-weekly period immediately following the Measurement Date (the "Reserved Budget Amount"); *provided* that if such calculation yields an amount less than or equal to zero, no Excess Cash Sweep Payment shall be due on such Sweep Date; *provided further* that, for the avoidance of doubt, the Debtors shall be entitled to retain in the Operating Accounts an amount not less than the sum of the Minimum Operating Balance and the Reserved Budget Amount. The Debtors shall include with each Variance Report a written calculation of Excess Cash and the corresponding Excess Cash Sweep Payment (if any) for the bi-weekly period covered thereby, in sufficient detail to permit recalculation by Secured Lender and the U.S. Trustee (the sufficiency of such detail, in the case of Secured Lender, shall be determined in Secured Lender's discretion). The Debtors and Secured Lender reserve all rights, remedies and defenses with respect to any Excess Cash Sweep Payment, including its characterization and application to amounts due under Secured Lender's claim, and waive none. For the avoidance of doubt, and notwithstanding anything to the contrary in this Fourth Interim Order, Secured Lender does not stipulate that any adequate protection provided under the Fourth Interim Order, including but not limited to any Excess Cash Sweep Payment, represents the monthly non-default interest otherwise due to Secured Lender under the Loan Documents (among other amounts due and owing) and reserves all rights.

7.      As provided for in paragraph 6 of the First Interim Order and the Budget attached as Exhibit 1 thereto, the Debtors shall pay to Secured Lender, by wire transfer to an account designated by Secured Lender in writing, no later than one (1) business day after entry of this Fourth Interim Order, the sum of $153,272.28, which sum, for the avoidance of doubt, has not yet been remitted to nor received by Secured Lender pursuant to the First Interim Order.

8. Secured Lender shall have the full protection of section 363(m) of the Bankruptcy Code with respect to the debts, obligations, liens, and security interests created or authorized by this Fourth Interim Order in the event that this Fourth Interim Order or any other authority contained or created herein is vacated, reversed, or modified on appeal or otherwise by any court.

9. Nothing contained in this Fourth Interim Order shall be deemed a finding with respect to the sufficiency of the adequate protection (as that term is defined in section 361 of the Bankruptcy Code) of the interests of Secured Lender or prejudice the right of Secured Lender to request adequate protection in addition to that provided under the terms of this Fourth Interim Order.

10. The Debtors shall timely file all required reports and make all required payments due to the U.S. Trustee during the pendency of the Chapter 11 Cases.

11. Each of the following shall constitute a "Termination Event" under this Interim Order:

   a. The Final Order or a further interim order extending the use of Cash Collateral is not entered on or before July 28, 2026;

   b. The Debtors' failure to comply with the terms, covenants, obligations and conditions of this Fourth Interim Order or the Budget; *provided that*, solely with respect to this subparagraph 11(b), the Debtors shall have three (3) calendar days from receipt of notice of a Termination Event under this subparagraph 11(b) by the Court, the U.S. Trustee or Secured Lender to cure any such failure;

   c. Appointment of a Chapter 11 trustee or the appointment of an examiner with expanded powers;

   d. Termination of the Debtors' franchise agreements with Hilton or Best Western;

e.  Conversion of the Chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code;

f.  The Chapter 11 Cases are dismissed; or

g.  The entry of an order of this or any other Court (other than the Final Order) reversing, staying, vacating or otherwise modifying in any material respect the terms of this Fourth Interim Order.

12.  Upon the Debtors' receipt of notice of the occurrence of a Termination Event, the Debtors are prohibited from using Cash Collateral until entry of a further order of this Court. The Debtors may continue using Cash Collateral pursuant to this Fourth Interim Order and the Budget upon receipt of notice of occurrence of a Termination Event solely under paragraph 11(b) of this Fourth Interim Order, subject to the conditions set forth in paragraph 11(b) of this Fourth Interim Order.

13.  Any provision of this Fourth Interim Order to the contrary notwithstanding, the Cash Collateral may be used for payment of the following (the "Carve-Out"): (a) allowed professional fees and disbursements of the Debtors' professionals retained pursuant to Bankruptcy Code section 327 incurred on or prior to receipt by the Debtors of written notice of the occurrence of a Termination Event, (b) allowed professional fees and disbursement of the Debtors' professionals retained pursuant to Bankruptcy Code section 327 incurred following receipt by the Debtors of written notice of the occurrence of a Termination Event not to exceed the aggregate amount of $250,000, and (c) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court.

176843243.1

12

14.    Where required (other than pursuant to paragraph 11(b) of this Fourth Interim Order), notice shall be provided to Debtors' proposed counsel and Secured Lender's counsel via email, U.S. Mail or overnight delivery service as follows, and shall be effective when delivered:

Lewis Brisbois Bisgaard & Smith LLP
500 Delaware Avenue Suite 700
Wilmington, DE 19801
Attention:      Scott D. Cousins
                Minyao Wang
Email:          scott.cousins@lewisbrisbois.com
                minyao.wang@lewisbrisbois.com
*Proposed counsel to the Debtors*

Duane Morris LLP
1201 North Market St, Suite 501
Wilmington, DE 19801
Attention:      Lawrence J. Kotler, Esq. (DE No. 4181)
                Sommer L. Ross, Esq. (DE No. 4598)
Email:          LJKotler@duanemorris.com
                SLRoss@duanemorris.com
*Counsel to Secured Lender*

15.    If any or all of the provisions of this Fourth Interim Order are modified, vacated, or stayed by subsequent order of this or any other Court, such stay, modification, or vacation shall not affect the validity and enforceability of any security interest or lien granted or authorized by this Fourth Interim Order prior to such stay, modification, or vacation. The reversal or modification on appeal of any or all of the provisions of this Fourth Interim Order shall not affect the validity or enforceability of any security interest or lien granted or authorized by this Fourth Interim Order.

16.    Nothing contained in this Fourth Interim Order shall be deemed to terminate, modify, or release any obligations of any of the Debtors or any non-debtor with respect to its respective obligations under any of the Loan Documents.

17.    Notwithstanding Bankruptcy Rule 4001(a)(1), this Fourth Interim Order is not stayed and shall be effective upon the date of its entry on the docket.

18.     The automatic stay of section 362 of the Bankruptcy Code, to the extent applicable, is hereby modified to permit the performance of each and every right and obligation set forth in this Fourth Interim Order, including those of Secured Lender.

19.     The Debtors are authorized, and hereby ordered, to pay quarterly fees to the United States Trustee.

20.     The Court has and will retain jurisdiction to enforce this Fourth Interim Order according to its terms.

21.     The Final Hearing or a hearing on a further interim order will be held on July 28, 2026 at 10:00 a.m. prevailing Eastern Time. The Debtors shall, on or before May 25, 2026, serve copies of a notice of the entry of this Fourth Interim Order, together with a copy of this Fourth Interim Order and a copy of the Motion, to those parties given notice of any prior hearing on the Motion and to any party that has filed prior to such date a request for notices with this Court. The notice of entry of this Fourth Interim Order shall state that any party in interest objecting to the entry of the Final Order or a continued interim order authorizing the use of Cash Collateral shall file written objections with the United States Bankruptcy Court Clerk for the District of Delaware no later than 4:00 p.m. (ET) on July 14, 2026, and objections shall be served, so that the same are received on or before such date, on the following: (a) LEWIS BRISBOIS BISGAARD & SMITH LLP, Attn: Scott Cousins and Minyao Wang, 500 Delaware Avenue, Suite 700, Wilmington, DE 19801, proposed counsel for the Debtors; (b) DUANE MORRIS LLP, Attn: Larry J. Kotler and Brad Lenox, 1201 North Market St, Suite 501, Wilmington, DE 19801, counsel to Secured Lender; and (c) THE OFFICE OF THE UNITED STATES TRUSTEE, Attn: Joseph McMahon, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801.

**Dated: May 26th, 2026**
**Wilmington, Delaware**

J. KATE STICKLES
UNITED STATES BANKRUPTCY JUDGE