**Exhibit 2**

**Blackline**

RLF1 36294457v.2

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BY HOTEL SPE-3 LLC,[1] | ) | Case No. 26-10324 (JKS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | **Re: Docket Nos.  186** |
| | ) | |

**ORDER PURSUANT TO FED. R. BANKR. P. 9019**
**APPROVING**
**FORBEARANCE AND SETTLEMENT AGREEMENT WITH**
**~~WITH~~ APF-CPX I, LLC, ACCESS POINT FINANCIAL, LLC, AND HDDA, LLC**

Upon consideration of the Motion of Debtors for Entry of an Order Pursuant to Fed. R. Bankr. P. 9019 Approving Forbearance and Settlement Agreement with APF-CPX I, LLC, Access Point Financial, LLC, and HDDA, LLC (the "**Motion**");[2] and the Court having jurisdiction over this matter; and the Court having determined that due and adequate notice of the Motion and the hearing thereon has been provided under the circumstances and that no other or further notice is required; and the Court having reviewed the Motion and the Amended Forbearance and Settlement Agreement attached ~~thereto~~hereto as **Exhibit ~~B~~A** (the "**Settlement Agreement**"); and the Court having held a hearing on the Motion on ~~June 16~~August 12, 2026; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the Court, having found that the Settlement Agreement is fair, equitable, reasonable, and in the best

---

[1]    The Debtors in these chapter 11 cases and the last four digits of their respective identification numbers are By Hotel SPE-3 LLC (3619); 1101 Wabash Development Mezz, LLC (9294); Wabash 11th Mezz LLC (4278); Pacific Tai Mezz LLC (3717); 1101 Wabash Development SPE LLC (9201); Wabash 11th LLC (3098); 1101 Wabash Development LLC (3365); Pacific Tai, LLC (9675); and SB Yen's Management Group, Inc. (1132). The location of the Debtors' corporate headquarters and the Debtors' service address is 806 N York Rd., Hinsdale, IL 60521.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in Motion or the Settlement Agreement, as applicable.

RLF1 36294838v.3

interests of the Debtors' estates and their creditors; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1. The Motion is **GRANTED** as set forth herein.

2. The Settlement Agreement, attached as **Exhibit ~~B~~A** to ~~the Motion~~this Order, is hereby **APPROVED** in its entirety pursuant to Bankruptcy Rule 9019 and section 105(a) of the Bankruptcy Code.

3. The Debtors are authorized to enter into and perform all of their obligations under the Settlement Agreement~~,~~ including without limitation~~: (i) making the monthly interest payments to HDDA, LLC at 5% per annum on the first day of each month commencing June 1, 2026; (ii) satisfying all amounts owed under the Loans in full on or before May 8, 2027; and (iii)~~, withdrawing the Stay Motion (Doc. No. 120) with prejudice.

4. The releases set forth in Section 8 of the Settlement Agreement are hereby approved in all respects, including the releases granted by the Debtors to the Lender Released Parties (as defined in the Settlement Agreement). Such releases are deemed granted effective as of the Effective Date (as defined in the Settlement Agreement).

5. The Stay Motion (Doc. No. 120) is hereby resolved and shall be deemed withdrawn with prejudice upon entry of this Order, consistent with Sections 6(a) and 6(b) of the Settlement Agreement. The Clerk of this Court is authorized and directed to update the docket accordingly. ~~Notwithstanding the language of the Settlement Agreement contemplating a Certification of Counsel and Stipulated Order on or before May 13, 2026 pursuant to Section 11(a)(vi), the parties agree that entry of this Order on or before June 16, 2026 shall not constitute an Event of Default under the Settlement Agreement.~~

2

6.      The Debtors are authorized to take all actions and to execute, deliver, and perform all documents and agreements reasonably necessary or appropriate to implement and effectuate the terms and provisions of this Order and the Settlement Agreement, without further order of this Court.

7.      The terms and provisions of this Order and the Settlement Agreement shall be binding upon and inure to the benefit of the Debtors, their estates, all Obligors, the Lender Parties, and each of their respective successors and assigns, including any chapter 7 or chapter 11 trustee appointed in these cases.

8.      Notwithstanding anything in the Bankruptcy Rules or the Local Rules to the contrary, this Order shall be effective immediately upon entry.

9.      This Court retains jurisdiction to interpret, implement, and enforce the terms and provisions of this Order and the Settlement Agreement, and to resolve any dispute arising thereunder.

RLF1 36294838v.3

# EXHIBIT A

Settlement Agreement

*[Link-to-previous setting changed from on in original to off in modified.].*

## AMENDED FORBEARANCE AND SETTLEMENT AGREEMENT

This Amended Forbearance and Settlement Agreement (the "Amended Agreement") is made and entered into as of the 8th ___ day of ~~May~~August, 2026 (the "Agreement Date") by and between **11TH ST. WABASH, LLC** ("11th Street"), **MICHIGAN WABASH 11TH LLC** ("Michigan"), **WH INVESTMENT PROPERTIES, L.P.** ("WH"), **WHITEHALL HOTEL SPE, INC.** ("Whitehall", and together with 11th Street, Michigan and WH, the "Whitehall Borrowers"), **EVANSTON NORTHSHORE HOTEL PARTNERS, L.P.** ("Evanston Borrower" and together with the Whitehall Borrowers, the "Borrowers"), **HUI-HSIEN YEN** ("HHY") and **SU-MEI YEN** ("SMY" and together with HHY, the "Yens" or "Guarantors"), **SB YEN'S MANAGEMENT GROUP, INC. ("SBY"), MW MANAGEMENT, INC.** ("MWM", and together with MWM, SMY ~~and~~, HHY and SBY, the "Whitehall Pledgors"), **ERIC CHANG**, an individual ("E. Chang"), **WANG FON CHANG**, an individual ("W. Chang"), **SHERMAN CHAO**, an individual ("Chao") and **BANK JI HSIEH**, an individual ("Hsieh" together with HHY, SMY, SBY, EC, WFC, and Chao, the "Evanston Pledgors", and together with the Whitehall Pledgors, the "Pledgors"; Borrowers, Guarantors and Pledgors are collectively, excluding SBY, the "Obligors"), **APF-CPX I, LLC** ("CPX I"), **ACCESS POINT FINANCIAL, LLC** ("APF"), and **HDDA, LLC** ("HDDA", together with CPX I and APF, the "Lender Parties"; Lender Parties and Obligors are collectively, the "Parties"). ~~**SB YEN'S MANAGEMENT GROUP, INC. ("SBY")**~~, **BY HOTEL SPE-3 LLC** ("By Hotel"), **1101 WABASH DEVELOPMENT MEZZ, LLC** ("1101 Wabash"), **WABASH 11TH MEZZ LLC** ("Wabash Mezz"), **PACIFIC TAI MEZZ LLC** ("Pacific Mezz"), **1101 WABASH DEVELOPMENT SPE LLC** ("1101 SPE"), **WABASH 11TH LLC** ("Wabash 11th"), **1101 WABASH DEVELOPMENT LLC** ("1101 Wabash Dev"), and **PACIFIC TAI, LLC** ("Pacific Tai", together with SBY, 1101 Wabash, Wabash Mezz, Pacific Mezz, 1101 SPE, Wabash 11th, and 1101 Wabash Dev. are collectively, "Debtors"), as parties solely as it relates to Sections 6, 8, 9, 10, 12 and 13 of this Amended Agreement.

### WITNESSETH:

WHEREAS, APF loaned Whitehall Borrowers $10,000,000 (the "Whitehall Loan"), evidenced by a Pledge Promissory Note dated February 3, 2016 in the principal amount of $10,000,000 executed by Whitehall Borrowers payable to HDDA, as successor to APF (the "Whitehall Note");

WHEREAS, contemporaneous with the execution of the Whitehall Note, the Yens executed that certain Guaranty Agreement dated February 3, 2016 in favor of HDDA, as successor to APF (the "Whitehall Guaranty");

WHEREAS, Whitehall Pledgors executed that certain Pledge Agreement dated February 3, 2016 in favor of HDDA, as successor to APF (the "Whitehall Pledge");

WHEREAS, APF loaned the Evanston Borrower $5,000,000 (the "Evanston Loan" and together with the Whitehall Loan, the "Loans") evidenced by that certain Pledge Promissory

Note dated as of December 7, 2018 executed by the Evanston Borrower payable to HDDA, as successor to APF (the "Evanston Note", together with the Whitehall Note, the "Notes");

2

*[Link-to-previous setting changed from on in original to off in modified.].*

WHEREAS, the Yens executed that certain Guaranty Agreement dated November 30, 2018 in favor of HDDA (the "Evanston Guaranty", together with the Whitehall Guaranty, the "Guaranties");

WHEREAS, Evanston Pledgors executed that certain Pledge Agreement dated December 7, 2018 in favor of HDDA (the "Evanston Pledge", together with the Whitehall Pledge, the "Pledges"; the Notes, Guaranties and Pledges, together with all documents executed in connection therewith or relating thereto, together with all amendments and/or modifications, are collectively, the "Loan Documents");

WHEREAS, Borrowers defaulted under the Loan Documents because, among other things, they failed to make payments as and when due (the "Loan Defaults");

WHEREAS, on October 5, 2021, APF and CPX I filed a complaint against the Yens in the United States District Court for the Northern District of Georgia (the "District Court"), initiating Case No. 1:21-cv-04114-SDG (the "District Court Case"), asserting claims against the Yens and seeking damages under Guaranties;

WHEREAS, the Parties and SBY executed that certain Settlement Agreement dated October 25, 2022, amended by that certain First Amendment to Settlement Agreement dated November 16, 2024 (as amended and/or modified, the "Settlement Agreement");

WHEREAS, the Parties and SBY defaulted under the Settlement Agreement because they failed to make payments as and when due under the Settlement Agreement (the "Settlement Defaults", together with the Loan Defaults, the "Existing Defaults");

WHEREAS, on February 20, 2026, APF and CPX filed a Notice of Default and Request for Entry of Consent Judgment in the District Court Case (the "Default Request"), requesting entry of the Consent Judgment agreed to by the Yens in the Settlement Agreement;

WHEREAS, on March 8, 2026, Debtors filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), initiating Case No. 26-10324 (JKS) (Jointly Administered) (the "Bankruptcy Cases");

WHEREAS, on April 13, 2026, Debtors filed their Motion for Entry of an Order Extending the Automatic Stay to Non-Debtor Guarantors Sue-Mei Yen and Hui-Hsien Yen pursuant to 11 U.S.C. §§ 105(a) and 362 and Granting Related Relief (the "Stay Motion", Doc. No. 120) in the Bankruptcy Cases;

WHEREAS, on April 14, 2026, the Lender Parties filed an objection (Doc. No. 133) to the Stay Motion in the Bankruptcy Cases;

3

*[Link-to-previous setting changed from on in original to off in modified.].*

WHEREAS, the Court set a hearing on the Stay Motion for May 11, 2026 (the "Hearing Date");

WHEREAS, the Parties desire to resolve the Stay Motion and modify the Settlement Agreement as more particularly set forth in this Amended Agreement;

WHEREAS, on May 8, 2026, the Parties executed that certain Forbearance and Settlement Agreement;

NOW, THEREFORE, in consideration of the promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows, and Debtors agree as to Sections 6, 7, 8, 11 and 12 hereof:

**AGREEMENT:**

1. **Recitals; Definitions.**  The foregoing recitals are confirmed by the Parties as true and correct and are incorporated herein by reference.  The recitals are a substantive, contractual part of this Amended Agreement.  Capitalized terms appearing herein and not otherwise defined shall have the meanings ascribed to such terms in the Settlement Agreement, unless the context hereof shall otherwise require or provide.

2. **No Waiver; No Commitment to Extend, Modify or Forbear.**

(a)     The execution, delivery and performance of this Amended Agreement by the Lender Parties and the acceptance by the Lender Parties of performance of Obligors hereunder (a) except as expressly provided hereunder, shall not constitute a waiver or release by the Lender Parties of any default that may now or hereafter exist under any of the Loan Documents or Settlement Agreement, (b) shall not constitute a novation of the Loan Documents or Settlement Agreement, and (c) except as expressly provided in this Amended Agreement, shall be without prejudice to, and are not a waiver or release of the Lender Parties' rights at any time in the future upon the occurrence of a New Event of Default hereunder to exercise any and all rights conferred upon the Lender Parties by the Settlement Agreement, the Loan Documents or otherwise at law or in equity.

(b)     Except as expressly provided herein, the Lender Parties have not committed, and are not committing, to extend, modify or otherwise restructure the Loans or Settlement Agreement, or forbear from exercising any of their rights or remedies under the Loan Documents or Settlement Agreement.  No prior course of dealing, no usage of trade, and no oral statements or comments by the Lender Parties or their officers, employees, servicer, attorneys or other agents will be deemed to be a commitment by the Lender Parties to extend, modify or otherwise restructure the Loans or Settlement Agreement or forbear from exercising any rights or remedies, except as expressly set forth herein, unless the same shall be reduced in writing and signed by an authorized representative of the Lender Parties.

*[Link-to-previous setting changed from on in original to off in modified.].*

(c)     Except as expressly modified hereby, the Settlement Agreement and Loan Documents, as modified by the Settlement Agreement, remain unmodified and in full force and effect.

3.     **Payment.**

(a)     <u>May 2026 Interest Payment.</u>  On or before May 8, 2026, <u>the </u>Obligors shall pay HDDA (i) the amount of $55,000.00 (the "<u>May Interest Payment</u>"), which HDDA will apply to accrued unpaid interest and (ii) $25,000.00, representing a partial payment of the Lender Parties' attorneys' fees and expenses incurred as a result of the Settlement Defaults (the "<u>Legal Fee Payment</u>").

(b)     <u>Monthly Payments.</u>  On June 1, 2026 and the first day of each month thereafter through and including the New Maturity Date (defined below), <u>the </u>Obligors shall make monthly payments of interest to HDDA, with interest accruing on the outstanding unpaid principal balance of the Loans and unpaid COVID-deferred interest at the rate of five percent (5%) per annum (the "<u>Settlement Rate</u>") through a New Event of Default hereunder.

(c)     <u>New Maturity Date.</u>  Payment of all principal and unpaid accrued interest, COVID-deferred interest, Lender Parties' attorneys' reasonable fees and expenses actually incurred and documented, and all other amounts owed under the Loan Documents and Settlement Agreement (excluding unpaid accrued interest at the default rate, late fees and the Exit Fee) shall be paid by <u>the </u>Obligors to HDDA on or before May 8, 2027 (the "<u>New Maturity Date</u>").

(d)     <u>Past Due Interest.</u>  On the Agreement Date, unpaid interest accrued at the non-default rate shall be added to the principal amount of the Loans, and will accrue interest as set forth herein.

(e)     <u>Prepayment.</u>  <u>The </u>Obligors may prepay the amounts owed hereunder and under the Loan Documents at any time and without penalty.

(f)     <u>Payments by Wire.</u>  All payments owed hereunder shall be paid to HDDA via wire transfer in immediately available funds pursuant to wire instructions set forth in the Settlement Agreement.

<u>4.</u>     <s>4.</s>     **Conditional Waiver of Default Rate Interest, Late Fees and Exit Fee**. HDDA agrees to waive the receipt of interest at the default rate, late fees and the Exit Fee provided that, after the Agreement Date, there is no New Event of Default and the Loans are satisfied in full on or before the New Maturity Date.  Upon a New Event of Default (other than the Existing Defaults), HDDA shall be entitled to receive interest at the default rate set forth in the Loan Documents, plus any late fees, plus attorneys' fees and expenses, plus the Exit Fee, and the same shall be immediately due and payable.

<u>5.</u>     <s>5.</s>     **Consent Judgment; Acknowledgement.**

5

*[Link-to-previous setting changed from on in original to off in modified.].*

(a) Within one (1) business day of the Agreement Date, counsel for the Lender Parties shall inform the District Court of the Parties' settlement (copying counsel to all other parties hereto) and file a notice of withdrawal (without prejudice) of the Default Request.

(a)        (b) If there is a New Event of Default under this Amended Agreement, the Lender Parties shall be entitled to exercise the remedies set forth in the Loan Documents and/or Settlement Agreement, including without limitation, presenting the Consent Judgment to the District Court for entry on the terms set forth in Section 7 of the Settlement Agreement and may take any steps to enforce the Consent Judgment and collect the amounts owed thereunder.

(b)        (c) Obligors acknowledge and agree that the following are owed to HDDA as of February 20, 2026 and further acknowledge and agree that no payments have been made by Obligors or SBY between February 20, 2026 and prior to the payments to be paid hereunder:

|  | Whitehall Loan | Evanston Loan |
|---|---|---|
| Principal | $8,045,053.90 | $4,957,824.88 |
| Non-Default Interest (as of 9/30/2022) | $851,185.16 | $649,464.84 |
| Default Interest (as of 9/30/2022) | $815,679.08 | $419,173.00 |
| COVID-Deferred Interest | $230,534.61 | $324,701.74 |
| Late Fees | $117,466.39 | $26,479.61 |
| Exit Fee | $80,450.54 | $0.00 |
| Modification Fee | $2,500.00 | $2,500.00 |
| Attorneys' Fees | $400,000.00 | $400,000.00 |
| Inspection Fee | $0.00 | $4,650.00 |
| Subtotal | $10,542,869.68 | $6,784,794.07 |
| Unpaid Accrued Interest (after 9/30/2022) | $3,935,218.62 | $2,835,451.40 |
| Less amounts received under Settlement Agreement | $2,774,496.22 | $1,914,856.05 |
| Total | $11,703,592.09 | $7,705,389.42 |

6.        6.    **Bankruptcy Matters.**
(a) On or before the Hearing Date, the Debtors shall submit a proposed Stipulated Order, under Certification of Counsel procedure, with a copy of this Agreement attached thereto, seeking Court authority to resolve the Stay Motion and approving the Debtors' entry into this Agreement..
(a)    The effectiveness of this Amended Agreement is conditioned on the Bankruptcy Court entering an order in form and substance reasonably acceptable to the Parties approving this Amended Agreement (the "Order"). Promptly upon execution of this Amended Agreement, the Debtors will file the Amended Agreement under notice with a revised order, to the extent applicable, seeking Court authority to resolve the Stay Motion and approve the Debtors' entry into this Amended Agreement.

(b)    Upon the entry of the Stipulated Order discussed in Section 6(a), counsel for Debtors shall file with the Bankruptcy Court a notice of withdrawal (with prejudice) of the Stay Motion..

6

*[Link-to-previous setting changed from on in original to off in modified.].*

(c)        The Parties and Debtors agree to act in good faith, support approval of this Amended Agreement and seek and support the Bankruptcy Court's entry of the ~~Stipulated~~ Order and to take actions as reasonably necessary to obtain entry of the ~~Stipulated~~ Order.

7.        **Potential Refinancing.**  The Lender Parties agree to reasonably cooperate with the Obligors to facilitate any good-faith refinancing efforts, subject to a subsequent agreement as to the proceeds thereof which are to be paid to the Lender Parties.

8.        **Waiver; Release.**

(a)        Obligors acknowledge and agree that there exists no breach, default or event of default by the Lender Parties or any of their predecessors in interest under the Loan Documents or Settlement Agreement, or any event or condition that, with notice or passage of time, or both, would constitute a breach, default or event of default by the Lender Parties or any of their predecessors in interest and represent and warrant to the Lender Parties that the Loan Documents and Settlement Agreement (each as modified hereby) are not subject to any credits, charges, claims, or rights of offset or deduction of any kind or character whatsoever.

(b)        Obligors hereby release, acquit and forever discharge APF, CPX I, HDDA, and each of their respective past and present officers, directors, shareholders, partners, agents, employees, attorneys, heirs, assigns, representatives, affiliates, successors and predecessors in interest (collectively, the "Lender Released Parties"), of and from any and all actions, causes of action, claims, suits, damages, judgments, liens, rights, costs, expenses, demands and compensation whatsoever in law and/or equity, that Obligors, whether collectively or individually, had, now has, or may later have or claim to have against any of the Lender Released Parties, now accrued or that may hereafter accrue, that have or allegedly have existed, occurred, happened, arisen, or transpired at any time from the beginning of time to the Agreement Date, WHICH DO OR MAY EXIST, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN (collectively, the "Obligor Released Matters"), including, without limitation, any of the same arising from or related to anything done, omitted to be done, or allowed to be done by any of the Lender Released Parties and in any way connected with this the District Court Case, the Bankruptcy Case, this Amended Agreement, the Settlement Agreement, the Loan Documents, the Loans, any funds disbursed or not disbursed thereunder or the manner of such disbursement, any other credit facilities provided or not provided, or any past or present deposit or other accounts (including, without limitation, "dominion of funds" accounts and lockbox arrangements), and any other dealings between any of the Obligors and any of the Lender Released Parties.

(c)        Debtors hereby, subject to the express approval of the Bankruptcy Court, release, acquit and forever discharge APF, CPX I, HDDA, and each of their respective past and present officers, directors, shareholders, partners, agents, employees, attorneys, heirs, assigns, representatives, affiliates, successors and predecessors in interest (collectively, the "Lender Released Parties"), of and from any and all actions, causes of action, claims, suits, damages,

7

*[Link-to-previous setting changed from on in original to off in modified.].*

judgments, liens, rights, costs, expenses, demands and compensation whatsoever in law and/or equity, that Debtors, whether collectively or individually, had, now has, or may later have or claim to have against any of the Lender Released Parties, now accrued or that may hereafter accrue, that have or allegedly have existed, occurred, happened, arisen, or transpired at any time from the beginning of time to the Effective Date, WHICH DO OR MAY EXIST, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN (collectively, the "Debtor Released Matters", together with the Obligor Released Matters, the "Released Matters"), including, without limitation, any of the same arising from or related to anything done, omitted to be done, or allowed to be done by any of the Lender Released Parties and in any way connected with this the District Court Case, the Bankruptcy Case, this Amended Agreement, the Settlement Agreement, the Loan Documents, the Loans, any funds disbursed or not disbursed thereunder or the manner of such disbursement, any other credit facilities provided or not provided, or any past or present deposit or other accounts (including, without limitation, "dominion of funds" accounts and lockbox arrangements), and any other dealings between any of the Debtors and any of the Lender Released Parties.

(d)      Obligors and Debtors agree that this waiver and release is an essential and material term of this Amended Agreement and that the agreements in this Section 7 are intended to be in full satisfaction of any alleged injuries or damages of Obligors and/or Debtors in connection with the Released Matters.  Obligors and Debtors represent and warrant that they have not purported to convey, transfer or assign any right, title or interest in any Released Matter to any other person or entity and that the foregoing constitutes a full and complete release of the Released Matters.  Obligors and Debtors understand that they may later discover claims or facts that may be different from, or in addition to, those that any of them has or now knows or believes to exist regarding the subject matter of the release contained in this Section 8, and which, if known at the time of signing this Amended Agreement, may have materially affected this Amended Agreement and such party's decision to enter into it and grant the release contained in this Section 8. Nevertheless, Obligors and Debtors intend to fully, finally and forever settle and release all claims that now exist, may exist or previously existed, as set out in the release contained in this Section 8, whether known or unknown, foreseen or unforeseen, or suspected or unsuspected, anticipated or anticipated, and the release given herein is and will remain in effect as a complete release, notwithstanding the discovery or existence of such additional or different facts.

(e)      Obligors and Debtors have consulted with legal counsel prior to signing this release, or had an opportunity to obtain such counsel and knowingly chose not to do so, and executes such release voluntarily, with the intention of fully and finally extinguishing all Released Matters.  Obligors and Debtors covenant that they will not sue (at law or in equity), in any regulatory proceedings or otherwise any of the Lender Released Parties with respect to any of the Released Matters.  It is the intention of Obligors and Debtors, and each of them, through this Amended Agreement, and with the advice of counsel, to fully, finally and forever settle and release all such matters.

(f)      Lender Parties hereby release, acquit and forever discharge By Hotel, SBY, 1101 Wabash, Wabash Mezz, Pacific Mezz, 1101 SPE, Wabash 11th, 1101 Wabash Dev and Pacific Tai (collectively, the "Debtor Released Parties"), of and from any and all actions, causes

*[Link-to-previous setting changed from on in original to off in modified.].*

of action, claims, suits, damages, judgments, liens, rights, costs, expenses, demands and compensation whatsoever in law and/or equity, that Lender Parties, whether collectively or individually, had, now has, or may later have or claim to have against any of the Debtor Released Parties, now accrued or that may hereafter accrue, that have or allegedly have existed, occurred, happened, arisen, or transpired at any time from the beginning of time to the Agreement Date, WHICH DO OR MAY EXIST, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN (collectively, the "Debtor Released Matters"), including, without limitation, any of the same arising from or related to anything done, omitted to be done, or allowed to be done by any of the Debtor Released Parties and in any way connected with this the District Court Case, the Bankruptcy Case, this Amended Agreement, the Settlement Agreement, the Loan Documents, the Loans, any funds disbursed or not disbursed thereunder or the manner of such disbursement, any other credit facilities provided or not provided, or any past or present deposit or other accounts (including, without limitation, "dominion of funds" accounts and lockbox arrangements), and any other dealings between any of the Obligors and any of the Lender Released Parties; provided that the foregoing Debtor Released Matters shall not limit nor be deemed to limit the rights of the Lender Parties to enforce the Settlement Agreement against Debtors in accordance with its terms. Debtor Released Matters specifically excludes all obligations of SBY under the Whitehall Pledge and the Evanston Pledge provided, however, that such obligations shall be non-recourse other than with respect to the Lenders' lien on SBY's equity interests in the other Obligors.

(g)     For the avoidance of doubt, nothing herein shall be construed as a release, alteration or modification of Lender Parties' right to exercise remedies set forth in the May 8, 2026 Forbearance and Settlement Agreement or this Amended Agreement against Obligors, including but not limited to the right to entry of the Consent Judgment against the Yens upon the occurrence of a New Event of Default.

9.    ~~9.~~    **Representations and Warranties.**  In order to induce the Lender Parties to execute, deliver, and perform this Amended Agreement, Obligors and Debtors represent and warrant to the Lender Parties that:

(a)    ~~(a)~~    The execution, delivery and performance of this Amended Agreement by Obligors and Debtors of their respective obligations hereunder will not violate or result in a breach or constitute a default under any agreements to which such Obligor is a party;

(b)    Each Obligor has full power and authority to enter into this Amended Agreement and this Amended Agreement, once executed and delivered, will be a valid and binding obligation of each Obligor enforceable against it in accordance with the Amended Agreement's terms;

(c)    Subject to entry of the ~~Stipulated~~ Order and the occurrence of the Effective Date, each Debtor has the full power and authority to enter into this Amended Agreement and this Amended Agreement, once executed and delivered, will be a valid and binding obligation of each Debtor enforceable against it in accordance with the Amended Agreement's terms

*[Link-to-previous setting changed from on in original to off in modified.].*

(d) The signatory executing this Amended Agreement on behalf of any Obligor or Debtor has the power, authority and legal right to execute this Amended Agreement and all documents to be executed in connection herewith on such party's behalf and to bind such party to the promises, covenants, terms and conditions set forth herein.

10. 10. **Conditions Precedent.**

(a) (a) This Amended Agreement shall become effective as between the Lender Parties and Obligors as of the Agreement Date upon the satisfaction of each of the following (the "Obligor Conditions Precedent"):

    i. (i) HDDA's receipt of the May Interest Payment and the Legal Fee Payment; and

    ii. (ii) The Lender Parties' receipt of counterparts of this Amended Agreement duly executed by and on behalf of Obligors and Debtors.

(b) (b) This Amended Agreement shall be effective as between the Lender Parties and Debtors upon the satisfaction of each of the following (the "Debtor Conditions Precedent"):

    i. (i) Satisfaction of each of the Obligor Conditions Precedent;

    ii. (ii) The Bankruptcy Court's entry of the ~~Stipulated~~ Order; and

    iii. (iii) The occurrence of the Effective Date. (The "Effective Date" is the day that is one (1) business day following the date on which the ~~Stipulated~~ Order is final and non-appealable.)

11. 11. **New Event of Default; Remedies.**

(a) (a) Each of the following shall constitute a "New Event of Default" hereunder:

    i. (i) Failure by any Obligor to make any payment as and when due hereunder and such failure continues for five business (5) days after notice by HDDA to Obligors, with notice and cure limited to three (3) times per calendar year;

    ii. (ii) A breach by any Obligor of any of the conditions, covenants, agreements, terms, representations and/or warranties set forth in this Amended Agreement and, only to the extent such default or breach is capable of being cured or remedied by the passage of time, such default shall not have been remedied or waived within five (5) days after notice from Lender of such default;

*[Link-to-previous setting changed from on in original to off in modified.].*

iii.   (iii) The entry of a final and non-appealable judgment against any Borrower in favor of any creditor(s) of any Borrower in an amount in excess of $500,000, which judgment is not otherwise covered by insurance;

iv.   (iv) A proceeding shall be commenced by or against any Obligor seeking liquidation, reorganization, bankruptcy or other relief with respect to their debts under any debtor relief law or seeking the appointment of a trustee, receiver, liquidator, custodian, or other similar official with respect to any Obligor or any of their assets; provided, however, if the proceeding is in the nature of an "involuntary" bankruptcy case or a lawsuit or proceeding seeking the appointment of a trustee, receiver, liquidator or custodian over any Obligor and/or its assets (any such proceeding, an "Involuntary Proceeding"), a New Event of Default shall be deemed to occur only as a result of such Involuntary Proceeding if such Involuntary Proceeding is not dismissed within forty-five (45) days after such Involuntary Proceeding is commenced;

v.   (v) Any Obligor initiates any judicial, administrative or arbitration proceeding against Lender or any of the Lender Released Parties (defined herein) for the purposes of delaying or hindering Lender's ability to enforce its rights or remedies under this Amended Agreement and/or the Loan Documents; or

vi.   (vi) If the Court does not enter the ~~Stipulated~~ Order on or before ~~May 13~~August 12, 2026.

(b)   (b)   Upon the occurrence of a New Event of a Default:

i.   (i) Lender Parties' agreement to forbear shall terminate automatically without further act or action by any of the Lender Parties and the Lender Parties shall have the immediate right to exercise their rights and remedies under the Loan Documents, the Settlement Agreement, hereunder and/or applicable law or in equity;

ii.   (ii) All indebtedness owed by Obligors under the Loan Documents, Settlement Agreement and this Amended Agreement is immediately due and payable without demand or notice;

iii.   (iii) The Lender Parties may present the Consent Judgment to the Court for entry on the terms set forth in the Settlement Agreement and may take any

~~9~~

steps to enforce the Consent Judgment, including requesting one or more writs of execution (the "Writ"), domesticating the Consent Judgment, pursuing collection of the amounts owed under the Consent Judgment, recording the Writ in the public records of any county or state, and executing on the Writ and levying on the Yens' assets;

11

*[Link-to-previous setting changed from on in original to off in modified.].*

> iv. (iv) The Lender Parties may take any steps in any bankruptcy case filed by or against any Obligor to protect the Lender Parties rights, including without limitation the Lender Parties rights as a secured creditor, and Obligors acknowledge and agree that the Lender Parties are not required to marshal any collateral securing the indebtedness owed under the Loan Documents; and

> v. (v) The Lender Parties may exercise any and all rights to conduct a foreclosure sale and/or UCC sale of any and all collateral securing the Indebtedness, including without limitation, the Properties.

12.    12.    **Miscellaneous.**

(a)    <u>Governing Law.</u>  This Amended Agreement shall in all respects be governed by, and construed in accordance with, the laws of the State of Georgia and federal law, as applicable.

(b)    <u>Headings.</u>  Section headings in this Amended Agreement are included herein for convenience of reference only and shall not constitute a part of this Amended Agreement for any other purpose.

(c)    <u>Enforceability.</u>  Should any one or more of the provisions of this Amended Agreement be determined to be illegal or unenforceable as to one or more of the Parties hereto, all other provisions nevertheless shall remain effective and binding on the Parties hereto.

(d)    <u>No Novation.</u>  This Amended Agreement is given as an amendment and modification of, and not as a payment of, the obligations of Obligors under the Loan Documents and Settlement Agreement and is not intended to constitute a novation of the Loan Documents or Settlement Agreement.

(e)    <u>Successors and Assigns.</u>  This Amended Agreement shall be binding upon and inure to the benefit of Obligors, the Lender Parties, Debtors and each of their respective successors, assigns and legal representatives, including any chapter 7 or chapter 11 trustee appointed with respect to any Obligor and/or any Debtor.

(f)    <u>Counterparts.</u>  This Amended Agreement may be executed in one or more counterparts, each of which shall be deemed an original (including electronic copies) but all of which together shall constitute one and the same instrument.  Facsimile, PDF or other electronic signatures hereto shall be effective as manually executed originals.

(g)    <u>No Waiver.</u>  Any future waiver, alteration, amendment or modification of any of the provisions of the Loan Documents, the Settlement Agreement or this Amended Agreement shall not be valid or enforceable unless in writing and signed by all Parties, it being expressly agreed that neither the Loan Documents, the Settlement Agreement nor this Amended

*[Link-to-previous setting changed from on in original to off in modified.].*

Agreement can be modified orally, by course of dealing or by implied agreement.  Any delay by any of the Lender Parties in enforcing its rights after a New Event of Default shall not be a release or waiver of a New Event of Default and shall not be relied upon as a release or waiver of the default.

(h)     Survivability.  The releases, warranties and representations of the Parties and Debtors in this Amended Agreement shall survive the termination of this Amended Agreement.

(i)     Joint Draftsmanship.  The terms and conditions set forth in this Amended Agreement are the product of joint draftsmanship by all Parties and Debtors, each being represented by counsel, and any ambiguities in this Amended Agreement or any documentation prepared pursuant to or in connection with this Amended Agreement shall not be construed against any party because of draftsmanship.

(j)     Strict Compliance.  The failure of a Party at any time or times to demand strict performance by the other Parties of any of the terms, covenants or conditions set forth herein, or of any of the Loan Documents or the Settlement Agreement shall not be construed as a continuing waiver or relinquishment thereof.  Any Party may, at any time, demand strict and complete performance by the other Parties of the terms, covenants and conditions of the Settlement Agreement, as modified hereby, and/or any of the Loan Documents.

(k)     13. **ENTIRE AGREEMENT.  THIS AMENDED AGREEMENT, THE SETTLEMENT AGREEMENT, AND THE LOAN DOCUMENTS, REPRESENT THE FINAL AGREEMENT AMONG THE OBLIGORS, THE LENDER PARTIES AND DEBTORS AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS AMONG OBLIGORS, THE LENDER PARTIES AND DEBTORS.**

[Remainder of page intentionally left blank.  Signature pages follow.]

13

*[Link-to-previous setting changed from on in original to off in modified.].*

IN WITNESS WHEREOF, Obligors, the Lender Parties and Debtors hereto have set their hands and seals as of the Agreement Date set forth above.

**LENDER PARTIES:**

**APF-CPX I, LLC,** a Delaware limited liability company

By:  **ACCESS POINT FINANCIAL, LLC,** a Delaware limited liability company, as servicer for APF-CPX I, LLC

By:    _____
Name:  Valerie K. Richmond
Title:    Authorized Representative

**APF-CPX II, LLC,** a Delaware limited liability company

By:  **ACCESS POINT FINANCIAL, LLC,** a Delaware limited liability company, as servicer for APF-CPX II, LLC

By:    _____
Name:  Valerie K. Richmond
Title:    Authorized Representative

**ACCESS POINT FINANCIAL, LLC,** a Delaware limited liability company

By:    _____
Name:  Valerie K. Richmond
Title:    Authorized Representative

**HDDA, LLC,** a Delaware limited liability company

By:    _____
Name:  Valerie K. Richmond
Title:    Authorized Representative

14

*[Link-to-previous setting changed from on in original to off in modified.].*

**BORROWERS:**

**11ᵀᴴ ST. WABASH, LLC**

By: _____
Name: _____
Title: _____

**MICHIGAN WABASH 11ᵀᴴ, LLC**

By: _____
Name: _____
Title: _____

**WH INVESTMENT PROPERTIES, L.P.**

By: _____
Name: _____
Title: _____

**WHITEHALL HOTEL SPE, INC.**

By: _____
Name: _____
Title: _____

**EVANSTON NORTHSHORE HOTEL PARTNERS, L.P.**

By: _____
Name: _____
Title: _____

15

*[Link-to-previous setting changed from on in original to off in modified.].*

**GUARANTORS AND PLEDGORS:**

**HUI-HSIEN YEN,** an individual

_____

**SU-MEI YEN,** an individual

_____

**MW MANAGEMENT, INC.**

By:  _____
Name:  _____
Title:  _____

**ERIC CHANG,** an individual

_____

**WANG FON CHANG,** an individual

_____

**SHERMAN CHAO,** an individual

_____

**BANK JI HSIEH,** an individual

_____

16

*[Link-to-previous setting changed from on in original to off in modified.].*

**DEBTORS:**

**SB YEN'S MANAGEMENT GROUP, INC.**
By: _____
Name: _____
Title: _____

**BY HOTEL SPE-3 LLC**
By: _____
Name: _____
Title: _____

**1101 WABASH DEVELOPMENT MEZZ, LLC**
By: _____
Name: _____
Title: _____

**WABASH 11TH MEZZ LLC**
By: _____
Name: _____
Title: _____

**PACIFIC TAI MEZZ LLC**
By: _____
Name: _____
Title: _____

**1101 WABASH DEVELOPMENT SPE LLC**
By: _____
Name: _____
Title: _____

17

*[Link-to-previous setting changed from on in original to off in modified.].*

**WABASH 11TH LLC**
By: _____
Name: _____
Title: _____

**1101 WABASH DEVELOPMENT LLC**
By: _____
Name: _____
Title: _____

**PACIFIC TAI, LLC**
By: _____
Name: _____
Title: _____

18